**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| FLANDERS K. GARDNER, ) | |
| ) | CASE NO. 1:14-cv-01515 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE DAN AARON POLSTER |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Flanders K. Gardner ("Gardner") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for a Period of Disability (POD), Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI) under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be VACATED and the case REMANDED.

**I. Procedural History**

On March 9, 2011 and March 18, 2011, Gardner filed applications for POD, DIB, and SSI alleging a disability onset date of August 24, 2010. (Tr. 12.) These applications were denied both initially and upon reconsideration.

On January 11, 2013, an Administrative Law Judge ("ALJ") held a hearing during which Gardner, represented by counsel, and an impartial vocational expert ("VE") testified. On January 24, 2013, the ALJ found Gardner was able to perform a significant number of jobs in the national

economy and, therefore, was not disabled.  (Tr. 20-21.)  The ALJ's decision became final when the Appeals Council denied further review.

## II.  Evidence

*Personal and Vocational Evidence*

Age fifty (50) at the time of his administrative hearing, Gardner is a "person closely approaching advanced age" under social security regulations.  *See* 20 C.F.R. § 404.1563(d) & 416.963(d).  (Tr. 20.)  Gardner has a high school education and past relevant work as a truck driver.  *Id*.

## III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Gardner was insured on his alleged disability onset date, August 24, 2010, and remained insured through the date of the ALJ's decision, January 24, 2013.  (Tr. 14.)  Therefore, in order to

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

be entitled to POD and DIB, Gardner must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

## IV. Summary of Commissioner's Decision

The ALJ found Gardner established medically determinable, severe impairments, due to "major depressive disorder, recurrent, severe, and intermittent, right-sided weakness involving the arm and leg." (Tr. 14.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*. Gardner was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 15, 20.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Gardner was not disabled. (Tr. 20-21.)

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

**VI. Analysis**

*Treating Psychiatrist*

In his first assignment of error, Gardner argues that the ALJ erred in evaluating the opinions of his treating psychiatrist, Kenneth Thompson, M.D. (ECF No. 15 at 5-11.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,'

---

[2] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

Gardner received psychiatric care on a monthly basis from Dr. Thompson and from therapist Julianne Bibro-Ruch, LCSW, at Squirrel Hill Health Center beginning March of 2011. (Tr. 448, 512.) On October 18, 2011, Dr. Thompson and Ms. Bibro-Ruch wrote a letter stating the following:

6

> Mr.Gardner displays consistent and recurrent symptoms in the form of Major Depression that are consistent with the DSM IV criteria. He reports a depressed mood most of the day, nearly every day; a markedly diminished interest or pleasure in all, or almost all, activities most of the day, nearly every day; insomnia nearly every day; psychomotor agitation nearly every day; fatigue or loss of energy nearly every day; feelings of worthlessness or excessive or inappropriate guilt nearly every day; diminished ability to think or concentrate nearly every day; recurrent thoughts of death. These symptoms cause clinically significant distress and impairment in his daily functioning.

(Tr. 448.) Dr. Thompson also opined that Gardner would have great difficulty finding employment given his physical and mental health limitations. (Tr. 449.)

On August 28, 2012, Dr. Thompson and Ms. Bibro-Ruch completed a Mental Status Evaluation wherein it was noted that Gardner had been diagnosed with major depressive disorder, recurrent/severe. (Tr. 511.) Dr. Thompson opined that Gardner, during an eight-hour workday, would *never* have difficulty interacting with supervisors; would *occasionally* have difficulty interacting with coworkers; would *occasionally* have difficulty managing even a low stress work environment; and, would *often* have difficulty maintaining concentration, pace and task persistence. *Id*. He also found that Gardner experiences approximately 8-10 bad days per month during which his symptoms would prevent him from completing an 8-hour work shift. *Id*.

On November 19, 2012, Dr. Thompson and Ms. Bibro-Ruch again wrote a letter largely repeating verbatim the content of the October 18, 2011 letter. (Tr. 512-13.)

The ALJ addressed Dr. Thompson's opinions as follows:

> Dr. Thompson submitted a letter in October 2011 indicated [sic] that claimant displays consistent and recurrent symptoms in the form of major depression and would benefit from receiving disability in order to pay his bills (Exhibits 2F, 3F, 6F, 7F, 8F, 9F 1lF, 12F, 14F, 16F, 17F and 18F).
>
> At Exhibits 17F and 18F, are additional statements from Dr. Thompson regarding claimant's mental health issues; however, I give little weight to his opinions indicating disability. I find the mental status examinations are consistent with a finding that the claimant cannot be expected to understand, remember and carry out more than simple, routine, repetitive tasks involving no piecework production, rate pace. It does not suggest that the claimant has no work capacity. I find no real reason to believe that the claimant could not work within the limitations I have set forth, based on the actual findings reported on mental status examination. Specifically, mental status evaluations through July 2012 have shown normal insight, normal judgment and normal thought processes. Claimant's GAF scores have ranged from 55-60, denoting only moderate symptoms, at best. Therefore, no weight is afforded Dr. Thompson's opinions insofar as they suggest and [sic] inability to perform all work activity, particularly for any 12-month period.

\* \* \*

> Turning next to an assessment of any functional restrictions associated with depression, I conclude that the claimant is not so severely affected that he would be precluded from performing a wide range of unskilled jobs in the national economy. The medical records show problems with depression as documented by Dr. Thompson's records, but this condition appears manageable with appropriate treatment. This is simply not a disabling condition for this claimant. Mental status examinations showed claimant as oriented with intact memory and thought processes. The record provides a basis for limitations related to depression, but not to a disabling extent. Viewing the totality of circumstances, little in the documentary evidence suggests that the severity, frequency, and duration of emotional dysfunction are as persistent, intrusive, or progressive as claimant has alleged. A review of the documentary evidence suggests a pattern of exaggeration of symptoms and functional limitations not supported by claimant's actual conditions. The record does not show a condition that would prevent the claimant from attending his medical appointments regularly, and his treatment records show that his thought processes have remained in order.[3]

(Tr. 17, 19.)

The ALJ essentially gave three reasons for rejecting Dr. Gardner's opinion: (1) his own interpretation of Dr. Thompson's mental status examinations is consistent with the RFC determination; (2) Dr. Thompson's observations that Gardner had normal insight, judgment and thought processes; and (3) Dr. Thompson assessing Global Assessment of Functioning (GAF) scores ranging from 55-60, denoting only moderate symptoms.[4]

---

[3] The Court also notes that the ability to conduct a meaningful review is hindered by the ALJ's pattern of making factual assertions or findings without corresponding citation to the record.

[4] The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Association, 4th ed. revised, 2000) ("DSM-IV"). An individual's GAF is rated between 0-100, with lower numbers indicating more severe mental impairments. A GAF score between 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. DSM-IV at 34. A GAF score between 51-60 denotes "moderate symptoms (*e.g.* flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.* few friends, conflicts with peers or co-workers)." DSM-IV at 34. It bears noting that a recent update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Association, 5th ed., 2013).

The decision fails to provide "good reasons" for rejecting Dr. Thompson's opinions. First, courts have routinely found that perfunctory assessments do not constitute "good reasons" for rejecting a treating physician's opinion. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007) (finding an ALJ failed to give "good reasons" for rejecting the limitations contained in a treating source's opinion where the ALJ merely stated, without explanation, that the evidence of record did not support the severity of said limitations); *Patterson v. Astrue*, 2010 U.S. Dist. LEXIS 54062, 2010 WL 2232309 (N.D. Ohio June 2, 2010) (remanding where the "ALJ did not provide any rationale beyond his conclusory statement that [the treating physician's] opinion is inconsistent with the objective medical evidence and appears to be based solely on [claimant's] subjective performance."); *Fuston v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 56627, 2012 WL 1413097 (S.D. Ohio Apr. 23, 2012) (finding the ALJ deprived the court of meaningful review where the ALJ discarded a treating physician's opinion without identifying any contradictory evidence or explaining which findings were unsupported).

The decision is devoid of any explanation as to how Dr. Thompson's mental status examinations are consistent with the RFC determination, but, at the same time, are inconsistent with Dr. Thompson's opinion with respect to Gardner's functional limitations. The Commissioner attempts to cure this deficiency by offering a *post hoc* rationale for the ALJ's opinion, identifying alleged inconsistencies between Dr. Thompson and Ms. Bibro-Ruch's opinions and their treatment notes.[5] (ECF No. 17 at 11-12, *citing* Tr. 262, 301, 387, 415-16, 452, 489, 492, 506, 529-30.) Defense counsel's argument cannot be substituted for the reasons actually offered by the ALJ. As this Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty.*

---

[5] Even if the Court were to consider this argument, it is not altogether clear that the portions of the record cited by the Commissioner necessarily undermine or conflict with the limitations assessed by Dr. Thompson and Ms. Bibro-Ruch. As explained, *infra*, an ALJ does not have the expertise to make medical judgments.

9

*Care, Inc.*, 532 U.S. 706, 715, n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *cf. Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986) (rejecting Defendant's *post hoc* rationale that obesity is *per se* remediable where there was no factual basis or findings of fact in the record to support such an argument).

Second, the ALJ is not a medical expert. Here, the ALJ does not cite any medical opinions supporting his conclusion that normal insight, judgment and thought processes are incompatible with the depression-based limitations Dr. Thompson ascribed to Gardner. In a similar vein, the ALJ furnishes no medical basis for his conclusion that GAF scores between 55-60 are inherently inconsistent with the limitations Dr. Thompson assessed. GAF scores measure impairments related to social, occupational *or* school functioning. It is unclear how or why the ALJ determined that Dr. Thompson's opinion – that Gardener would have occasional difficulty interacting with coworkers or managing even a low stress work environment and "often have difficulty maintaining concentration, pace and task persistence" – is inherently incompatible with the assessed GAF scores. The former plainly relate to occupational limitations while Gardner's GAF scores may have focused more on his social rather than the occupational impairments. Neither the ALJ nor this Court can deduce the rationale behind the GAF scores.

Moreover, in this Court's view, a determination that moderate GAF scores are inherently incompatible with the limitations assessed by Dr. Thompson constitutes a medical judgment. It is well-established that an ALJ may not substitute his personal interpretation of the evidence for those of medical professionals. *See, e.g., Meece v. Barnhart*, 192 Fed. App'x. 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.") (*citing McCain v. Dir., Office of Workers' Comp. Programs*, 58 Fed. App'x 184, 193 (6th Cir. 2003) (citation omitted); *Pietrunti v. Director, Office of Workers' Comp. Programs, United States DOL*, 119 F.3d 1035, 1044 (2nd Cir. 1997); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including [ALJs] of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.")); *accord Winning v. Comm'r of Soc. Sec.*, 661 F. Supp.2d 807, 823-24 (N.D. Ohio 2009) ("Although the ALJ is charged with making credibility determinations,

an ALJ 'does not have the expertise to make medical judgments.'"); *Stallworth v. Astrue*, 2009 U.S. Dist. LEXIS 131119, 2009 WL 2271336 at *9 (S.D. Ohio, Feb. 10, 2009) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record.") (*quoting Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)).

Finally, the ALJ's discussion lacks any indication that the factors set forth in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) were considered, or at least did not sufficiently explain how those factors weighed against assigning greater weight to Dr. Thompson's opinion.

The Court finds that the ALJ erred by not giving good reasons for rejecting the limitations assessed by Dr. Thompson. Gardner's remaining assignments of error are rendered moot and will not be addressed in the interests of judicial economy.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision should be VACATED and the case REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

s/ Greg White
United States Magistrate Judge

Date: June 2, 2015

**OBJECTIONS**
Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).