# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **FLANDERS K. GARDNER,** | ) | **CASE NO. 1:14 CV 1515** |
| | ) | |
| Plaintiff, | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **COMMISSIONER OF SOC. SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Flanders K. Gardner challenges the final decision of the Acting Commissioner of Social Security denying his claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1381 *et seq*. The Court referred the case to Magistrate Judge Greg White for preparation of a Report and Recommendation pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b). (Doc #: 19 ("R&R").) Magistrate Judge White recommends that the Court vacate the Commissioner's decision and order remand pursuant to § 405(g) sentence four. (R&R at 1.) The Commissioner filed objections to the R&R. (Doc #: 20 ("Obj.").) Having reviewed the record, the R&R and the objections, the Court **OVERRULES** the objections, **ADOPTS** the R&R, **VACATES** the decision of the administrative law judge ("ALJ"), and **REMANDS** the case to the Social Security Administration ("SSA") for further proceedings consistent with this opinion.

**I.**

Flanders Gardner, a high-school educated truck driver for over 20 years, suffered a cerebral vascular event on August 24, 2010 which gave rise to right facial droop, right-sided hemiparesis, tremors, and severe, recurrent major depression, not to mention the loss of his job and marriage.  Among other things, Gardner's treating psychiatrist, Dr. Thompson, and therapist, Ms. Bibro-Ruch, who treated Gardner *monthly*, opined that he would often have difficulty maintaining concentration, pace and task persistence during an eight-hour workday, would occasionally have difficulty managing even a low stress environment and interacting appropriately with coworkers, and would likely miss 8 to 10 days per month due to exacerbation of his depression symptoms. They recommended that Gardner receive disability based on his functional impairments due to Major Depression.

After a hearing, the ALJ determined that Gardner suffers from the following severe impairments: major depressive disorder, severe, recurrent and intermittent, and right-sided weakness involving the arm and leg.  However, the ALJ found that Gardner maintained the residual functional capacity to perform limited light work.  In so finding, the ALJ expressly accorded "little" to "no" weight to Gardner's treating mental healthcare professionals' opinions regarding the effect Gardner's psychological symptoms had on his ability to work.  (Doc #: 14 at 21.)  And missing entirely from the ALJ's analysis is any mention of their opinion that Gardner experiences "approximately 8 - 10 bad days per month during which [his] symptoms are increased and [he] would not be able to complete an 8-hour work shift."[1]  (Doc #: 14 at 515.)

---

[1] The ALJ also assigned "little" weight to the opinion of Dr. Sherman, an internist whom the State employed to examine Gardner in May 2011 and whose opinion the ALJ discounted, in part, because his assessment was based on a one-time examination (Doc #: 14 at 21), and assigned "controlling" weight to the opinions of Dr. Hammer, a neurologist who saw Gardner only two

*See, e.g., Shrader v. Astrue*, 2012 WL 5383120 at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."). The ALJ's decision became final when the Appeals Council denied further review.

On appeal, Gardner argues, among other things, that the ALJ violated the SSA's "treating source" regulation, 20 C.F.R. § 404.1527(d)(2). The Magistrate Judge agrees, finding that the ALJ's "decision fails to provide 'good reasons' for rejecting Dr. Thompson's opinions." (R&R at 9.) The Commissioner objects to the R&R alleging that it fails to follow the deferential substantial evidence standard that is applicable to judicial review of ALJ decisions. (Obj. at 1.) Specifically, the Commissioner contends that the Magistrate Judge incorrectly determines that:

(1) the Commissioner's identification of inconsistencies between Dr. Thompson's and Ms. Bibro-Ruch's opinion and their treatment notes was improper *post hoc* rationalization;

(2) it was improper for the ALJ to rely on Global Assessment Functioning "GAF" scores to discount Dr. Thompson's opinion; and

(3) the ALJ is required to discuss every regulatory factor in 20 C.F.R. §§ 404.1527(d) in order to satisfy the treating source rule.

(Id. at 2-3.)

**II.**

The findings of the Commissioner will be affirmed unless the ALJ failed to apply the correct legal standard or made findings of fact unsupported by substantial evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

---

times. Even though Dr. Hammer is not a psychiatrist, he observed that Gardner "gets tearful every time I mentioned his incident and his truck," "appears to be suffering some symptoms of posttraumatic stress disorder," and recommends that his anti-depressant medication be increased from 20 mgs a day to 30 mgs. (Id. at 458.)

The "treating physician" rule, 20 C.F.R. § 404.1527(d)(2), requires an ALJ to give controlling weight to the opinion of a treating physician if it: (1) is based upon medical data and diagnostic tests, and (2) is not inconsistent with other substantial evidence in the record. *Nejat v. Comm'r of Soc. Sec.,* 359 Fed.Appx. 574, 577 (6th Cir. 2009). When a treating physician's opinion is not controlling, "an ALJ *must* apply certain factors [under 20 C.F.R. § 404.1527(d)]. . . in determining what weight to give the opinion." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 747 (6th Cir. 2007) (quoting *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (2004)).

The ALJ must also articulate "good reasons" for discounting a treating physician's medical assessment, "reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers,* 486 F.3d at 242 (quoting Soc. Sec. Rule. 96-2p, 1996 WL 374188, at *4). Failure to specify "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243.

## III.

The Commissioner first objects that its identification of inconsistencies between Dr. Thompson's and Ms. Bibro-Ruch's opinion and their treatment notes was improper post hoc rationalization, stating that these inconsistencies were exemplified in the record. (Obj. at 1.) This objection is simply a reiteration of the Commissioner's original argument, which has already been considered and rejected by the Magistrate Judge. The Magistrate Judge assessed that the Commissioner's analysis, even if considered by the Court, does not "necessarily

undermine or conflict with the limitations assessed by Dr. Thompson and Ms. Bibro-Ruch" because "an ALJ does not have the expertise to make medical judgments." (R&R at 9 n.5.)

The Commissioner also argues that the Sixth Circuit allows ALJs to rely on GAF scores to discount a treating physician's medical opinion. (Obj. at 2.) Under the Sixth Circuit, there is no "statutory, regulatory, or other authority requiring the ALJ to put stock in the GAF score. . ." *Kornecky v. Comm'r of Soc. Sec.,* 167 Fed.App'x 496, 511 (6th Cir. 2006) (finding that "even if the ALJ placed some weight on Kornecky's GAF scores, any tendency they had to suggest that Kornecky could not work was countered by the vocational expert's testimony that someone with her limitations could still do certain widely available work.") Even though the Sixth Circuit denied the claimant's benefits in *Kornecky*, its finding concerning GAF scores stands for the proposition that expert testimony carries more weight than the scores because "a score may have little or no bearing on the subject's social and occupational functioning." *Id.*

The Commissioner relies on *Nelson v. Comm'r of Soc. Sec.*, but in that case, the court held that the ALJ properly discounted the opinions of the treating physicians because he considered a slew of contrary medical evidence. 195 Fed.App'x 462, 472. The ALJ in *Nelson* only briefly considered the claimant's GAF score, placing much more reliance on testimony made by vocational experts in determining the claimant's disability. *Id.*

Here, the ALJ states simply that "[Gardner's] GAF scores have ranged from 55-60, denoting only moderate symptoms, at best." (Doc #: 14 (Tr.) at 21.) The Magistrate Judge finds that "the ALJ furnishes no medical basis for his conclusion that GAF scores between 55-60 are inherently inconsistent with the limitations Dr. Thompson assessed." (Tr. at 10.) As noted in

*Kornecky,* the GAF scores may not reflect an individual's functional abilities, especially where expert testimony indicates otherwise.

Lastly, the Commissioner contends that the Magistrate Judge incorrectly "faults the ALJ for failing to explicitly discuss the factors in 20 C.F.R. §§ 404.1527(d) and 416.927(c)(2), applicable to the treating source opinion." (Obj. at 3.) Per § 404.1527(d), the ALJ is required to consider certain factors [2] "when deciding to afford non-controlling weight to an opinion by a treating source." *Nejat,* 359 Fed.Appx. at 578. The ALJ failed to consider the factors, and thus, violated the SSA's own regulations. Even if the ALJ had considered these factors, the substantial evidence in the record weighs in favor of placing controlling weight in Dr. Thompson's and Ms. Bibro-Ruch's opinions.

Because the ALJ failed to provide good reasons for discounting Dr. Thompson's medical opinion, the Magistrate Judge properly concluded that the ALJ made findings of fact unsupported by substantial evidence. The ALJ relies on his own determination of the significance of Gardner's GAF scores and Medical Status Evaluations to discount Dr. Thompson's opinion. In the process of making these observations, however, the ALJ improperly makes medical judgments and does not otherwise explain how these diagnostic tests are incompatible with Dr. Thompson's opinion that Gardner is medically disabled.

(Continued on next page.)

---

[2]These factors include: " (1) length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the treating source." *Bowen,* 478 F.3d at 747 (citing 20 C.F.R. § 404.1527(d)).

## IV.

Accordingly, the Court hereby **OVERRULES** the objections, (**Doc #: 20**), **ADOPTS** the R&R (**Doc #: 19**)), **VACATES** the Commissioner's decision denying Gardner's applications for POD, DIB, and SSI, and **REMANDS** the case to the SSA for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED.**

                                            */s/Dan Aaron Polster     July 14, 2015*
                                            **Dan Aaron Polster**
                                            **United States District Judge**